UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LUIS ALMONTE,

Plaintiff,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY LONG ISLAND RAILROAD COMPANY; JOHN AND JANE DOES 1-10,

Defendants.

MEMORANDUM & ORDER

24-CV-00113 (ENV) (JRC)

VITALIANO, D.J.

Plaintiff Luis Almonte commenced the instant action, asserting race-based discrimination and retaliation against defendants, his former employer the Long Island Railroad Company ("LIRR")[1] and John and Jane Does 1-10, under various federal and state laws.[2] *See* Compl., Dkt. No. 1. LIRR now moves to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). *See* Mot., Dkt. No. 21. For the reasons that follow, that motion is granted.

Background[3]

On July 25, 2001, Almonte began his LIRR employment as a Signal Inspector. Compl. ¶¶ 17-18. With additional licenses came additional responsibilities, including inspecting and

[1] The Clerk of Court is directed to amend the caption to reflect defendant's accurate name, "Long Island Rail Road Company."

[2] Plaintiff brings nine causes of action. They include claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); 42 U.S.C. § 1981; Executive Law of the State of New York § 290, *et seq.* ("NYSHRL"); and N.Y.C. Admin. Code § 8-107, *et seq.* ("NYCHRL"). Compl. ¶¶ 33-76.

[3] The facts are drawn from the complaint and, with respect to this Rule 12(b)(6) motion, are read as true, with all reasonable inferences drawn in plaintiff's favor. *See Vietnam Ass'n for Victims of*

repairing railroad signals. *Id.* ¶ 18. Almonte asserts that he was subjected to discrimination in the workplace prompted by, in his words, "his age and or Hispanic descent." *Id.* ¶ 19. Plaintiff claims that he was not alone in this experience, as he witnessed the intense scrutiny of and retaliation against other minority employees who complained of discrimination to LIRR's Office of Diversity Management or who participated in protected activities. *Id.* ¶¶ 20-21.

According to Almonte, LIRR employed an unwritten policy of prioritizing disciplinary matters over discrimination complaints. *Id.* ¶¶ 21-22. Many disciplinary proceedings, he contends, were pretextual. *Id.* ¶ 21. When such disciplinary matters were resolved—often by way of suspension or termination—the employee's discrimination complaint would then be "ignored." *Id.* ¶¶ 22-23. In other instances, including plaintiff's, a discrimination complaint, he says, would be investigated concurrent to and in the context of the disciplinary proceeding, depriving plaintiff of an independent review by LIRR's equal employment office ("EEO"). *Id.* ¶ 26. Almonte alleges that these practices blocked employees of color from their right to oppose racial discrimination and encouraged supervisors to retaliate. *Id.* ¶¶ 24-25. Plaintiff filed two internal EEOC charges on January 22, 2021 and May 31, 2022, respectively—both for discrimination and retaliation. *See* Opp., Ex. 2; Mot., Ex. C.

In this posture, Almonte asserts that LIRR drove him to "a Hobsons' Choice" between defending his livelihood or his rights. *Id.* ¶ 27. To preserve the former, plaintiff withdrew his

---

*Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). The Court also considers the two charges, *see* Opp., Dkt. No. 23, Ex. 2; Mot., Ex. C, that plaintiff filed with the New York State Division of Human Rights ("NYSDHR"), as they are "integral to the complaint," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and courts "regularly" take judicial notice of such public records, *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 191 (E.D.N.Y. 2016). NYSDHR charges are considered dually filed with the United States Equal Employment Opportunity Commission ("EEOC"). *See Morales v. City of New York Dep't of Juv. Just.*, No. 10-cv-829, 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012).

complaints, allegedly as a provision of an agreement regarding his disciplinary matter. *Id.* Founded in these machinations, Almonte claims that he was constructively discharged on or about September 8, 2022, *id.* ¶ 17, and he commenced the instant action on January 5, 2024, *see* Compl. LIRR moved to dismiss for failure to state a claim on August 15, 2024. *See* Mot.; *see also* Opp.; Reply, Dkt. No. 24.

Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, a court "'must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff.'" *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 163 (E.D.N.Y. 2020). To survive, a complaint must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Berk v. Choy*, 607 U.S. 187, 193, 146 S. Ct. 546, 553, 223 L. Ed. 2d 462 (2026) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

Discussion

I. Discrimination

Title VII makes it unlawful for an employer "'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Muldrow v. City of St. Louis*, 601 U.S. 346, 354, 144 S. Ct. 967, 974, 218

L. Ed. 2d 322 (2024). As for the relevant adverse employment action, a party must show only "some harm respecting an identifying term of condition of employment." *Id.* at 355.

"[E]xhaustion of administrative remedies" before EEOC is a "precondition" to bringing a Title VII action in federal court.[4] *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). To raise administrative exhaustion in a motion to dismiss, *see, e.g.*, *Hardway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), the non-exhaustion must be "clear from the face of the complaint (and incorporated documents)," *Caddick v. Pers. Co. I LLC*, No. 16-cv-7326, 2018 WL 3222520, at *6 (S.D.N.Y. June 29, 2018). EEOC's right-to-sue letter generally must be filed with a complaint seeking Title VII relief in federal court. *DiPetto v. U.S. Postal Serv.*, 383 Fed. App'x 102, 104 (2d Cir. 2010) (summary order). After addressing exhaustion in only broad strokes in the complaint, *see* Compl. ¶¶ 7, 9, 11, plaintiff attached, for the first time, the EEOC right-to-sue letter as Exhibit 1 to his opposition brief, *see* Dkt. No. 23-1.[5]

Assuming, *arguendo*, that the Court were to accept this belated submission, the claim brought in district court still must have been either (1) expressly raised before EEOC or (2) "reasonably related" to the respective EEOC charge. *Caddick*, 2018 WL 3222520, at *6. There are three "limited avenues" to the latter category: (1) those that "fall within the scope of the EEOC investigation" that "can reasonably be expected to grow out of" the discrimination charge; (2) those that "allege retaliation arising from the filing of an EEOC charge"; and (3) those that "allege further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* "The focus" of this inquiry "should be on the factual allegations … in the [EEOC]

[4] There is no such requirement for § 1981 claims. *See, e.g.*, *Phillips v. UFCW Loc. 2013*, No. 23-CV-8283, 2025 WL 2659087, at *16 (S.D.N.Y. Sep. 17, 2025).

[5] Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination.

charge … describing the discriminatory conduct." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

Reviewing the two subject EEOC charges against the complaint filed in this action, Almonte's Title VII race-based discrimination claim does not fit in these categories. *See* Mot. at 12-14; Reply at 8-10. On the first charge, under the heading, "Basis of alleged discrimination," plaintiff checked the boxes next to: (1) "Race/Color or Ethnicity," where he handwrote, "Black/Hispanic" and checked the option titled, "trait historically associated with race such as hair texture or hairstyle"; (2) "Age" and handwrote his birthdate; (3) "National Origin" and handwrote "Dominican,"; (4) "Sexual Orientation" and handwrote "Heterosexual"; and (5) "Sex" and handwrote "Male." Opp., Ex. 2, at 3. Although he did not check the box next to "Creed/Religion," Almonte handwrote, "Catholic" on the line provided. *Id.* Put simply, "race" represented only one out of a mélange of five—arguably six if one counts "Creed/Religion"—separate bases for alleged discrimination that Almonte himself selected. *Id.* The next section of the charge—which possessed a similar box-checking format—prompted plaintiff to check all the "Acts of alleged discrimination" that applied. *Id.* at 4. Rejecting the nineteen provided options, Almonte checked "Other" and handwrote, "Denied use of trucks. Denied overtime." *Id.*

The statute, however, seeks a more critical analysis. Here, it requires inquiry as to "whether there is any explanation or description supporting a particular claim.'" *Holmes v. Fresh Direct*, No. 13-cv-4657, 2015 WL 4885216, at *5 (E.D.N.Y. Aug. 5, 2015). The handwritten narrative that plaintiff supplied beneath those box-checking sections described only age-based discrimination. Opp., Ex. 2, at 5. Almonte explained that in January 2020 the signal foreman called him an "old person not in a joking way but in a belligerent manner." *Id.* Over the following months, Almonte received "lesser roles" while his former duties were reallocated to "younger and

less experienced individuals," who were rewarded with overtime pay. *Id.* After six or seven months, plaintiff spoke to his supervisors who, in his words, "all agreed and gave some form of blessing" to his idea to file an EEOC charge. *Id.* The narrative proceeded to describe a meeting that he convened with LIRR supervisors that clinched "a gentleman's agreement," providing that the signal foreman "would stop his malfeasance" on plaintiff. *Id.* That plan, however, broke down after a few months, resulting in Almonte's decision to file his charges of violations of § 1981, Title VII, NYSRHL, and NYCRHL on January 5, 2024. *See generally* Compl.

In reconciling this narrative with the checkboxes, the Second Circuit counsels that the "focus should be on the factual allegations in the administrative complaint, rather than what formal labels are attributed to such allegations, or what boxes are checked." *Caddick*, 2018 WL 3222520, at *6. "It is well-settled that merely checking a box, or failing to check a box does not necessarily control the scope of the charge." *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. 2018). In *Holmes*, a court in this district held that the plaintiff's "single reference to the fact that she is a black female" by way of checking a box on her EEOC charge did "not suffice to exhaust administrative remedies" on a sex-discrimination claim. 2015 WL 4885216, at * 5-6. Likewise, here, although plaintiff checked the "Race/Color or Ethnicity" box, his first EEOC charge's substance points to only potential age-based discrimination.[6] *See Freckleton v. Ambulnz NY LLC*, No. 21-cv-4615, 2022 WL 4644673, at *3 (E.D.N.Y. Sep. 30, 2022).

This finding aligns with Almonte's second EEOC charge, in which he checked only the age-based discrimination box, handwriting his birthdate. Mot., Ex. C, at 3. Under the "Acts of alleged discrimination" heading, plaintiff checked the option for "Gave me different or worse job

[6] The NYSDHR Final Investigation Report and Basis for Determination relied solely on Almonte's allegation that his signal inspector called him an "old person." Mot., Ex. B.

duties than other workers doing the same job" and handwrote next to the "Other" box, "Refused to include me on high priority assignments for over 12 months." *Id.* at 4. The accompanying handwritten narrative is silent on any race-based fact. *See id.* at 4-5. Plaintiff seems to acknowledge the insufficiency of his race-based claim in his complaint, as he states in his opposition brief, "Simply because [p]laintiff expressly alleged age discrimination does not disqualify [p]laintiff's allegations of racial discrimination from also permeating the workplace." Opp. at 5.

As "it is the substance of [a] charge and not its label that controls," the Court finds that both EEOC charges support only potential age-based discrimination.[7] *Freckleton*, 2022 WL 4644673, at *3. "[C]laims that introduce a wholly different type of discrimination" from that in the administrative charge are," under well-established law, "typically deemed to be not reasonably related." *Jennings v. SUNY Health Sci. Ctr. at Brooklyn (Downstate Med. Ctr.*), 201 F. Supp. 3d 332, 336 (E.D.N.Y. 2016). The Title VII race-based discrimination claim is neither addressed in nor "reasonably related" to the allegations in either EEOC charge. And the "'*sine qua non*' of a … race-based discrimination suit" brought under Title VII in federal court "is that the 'discrimination must be *because of* the plaintiff's protected characteristic.'" *Buon v. Spindler*, 65 F.4th 64, 82 (2d Cir. 2023); *see also* 42 U.S.C. § 2000e. For these reasons, Almonte has failed to exhaust his administrative remedies with respect to this Title VII discrimination claim, and it is dismissed. *See Guy*, 407 F. Supp. 3d at 191-93.

Plaintiff's § 1981 race-based discrimination cause of action meets the same fate. To prop up such a claim, a plaintiff must demonstrate that "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589

---

[7] In any event, Title VII does not contemplate age-based discrimination. *See* 42 U.S.C. § 2000e(a).

U.S. 327, 341, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). Here, however, the complaint's bald allegations refer to race in only a conclusory manner, citing no specific "race-based comments" or actions by any defendant. *Gatling v. West*, 850 Fed. App'x 91, 97 (2d Cir. 2021). Instead, plaintiff asserts that he was "subjected to repeated acts of discrimination motivated by his age and or Hispanic descent." Compl. ¶ 19. Although the Second Circuit embraces the Hispanic ethnicity as a "race" for § 1981 and Title VII purposes, Almonte's cursory reference to his Hispanic identity, without sufficient linkage to defendants' so-called "unlawful acts or omissions," is insufficient. *Id.* ¶¶ 34-35; *see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 606-07 (2d Cir. 2016). Indeed, plaintiff does "little more than cite to" alleged "mistreatment and ask the court to conclude that it must have been related to [his] race"—a strategy that does not survive Rule 12(b)(6) review. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). Therefore, this claim, too, is dismissed.

II. Retaliation

To establish Title VII retaliation, a plaintiff must demonstrate that "(1) [he] participated in an activity protected by Title VII [], (2) this participation was known to [his] employer, (3) the employer subjected [him] to a materially adverse action thereafter, and (4) a causal connection existed between the protected activity and the adverse action." *Moll v. Telescator Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024). The same standard extends to a retaliation claim brought under § 1981. *See Simplice v. Sodexomagic, LLC*, No. 24-cv-7818, 2026 WL 12156244, at *1, n.1 (E.D.N.Y. May 4, 2026). Indeed, "claims that allege retaliation arising from the filing of an EEOC charge" qualify as a "reasonably related claim" that may be brought in federal court even if they were not explicitly cited in the EEOC charge(s). *Caddick*, 2018 WL 3222520, at *6. Here, the complaint heading for plaintiff's Title VII retaliation claim alleges that defendants retaliated

against him "for the protected activity of filing complaints of discrimination with [] EEOC and [] NYSDHR." Compl. at 10.

But even assuming, *arguendo*, that the Title VII retaliation claim clears that bar, it does not survive Rule 12(b)(6) review. In his complaint, Almonte assigns another motive to defendants' alleged acts, claiming that their "retaliatory animus" stemmed from plaintiff's "participation in other protected activities including" his "participation as a witness in the investigation of complaints of unlawful discrimination on the basis of race or color." *Id.* ¶ 53. At that, Almonte's pleading of allegations of retaliation, *see, e.g.*, *id.* ¶¶ 41-46, 53-56, that have nothing to do with his EEOC claims are hazy, conclusory, and fall far short of plausibility. *Iqbal*, 556 U.S. at 678. In short, Almonte has pled no facts connecting his discharge to the filing of his EEOC complaints. *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018). For these reasons, the Court dismisses Counts II and IV for retaliation under Title VII and § 1981.

<u>Leave to Amend</u>

Finally, the Court must address whether Almonte may replead any of his claims in an amended complaint. Leave to amend should be "freely given," but is properly denied as futile when the amended portion of the complaint would fail to state a cause of action. *See* Fed R. Civ. P. 15(a); *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006); *Foster v. Humane Soc'y of Rochester & Monroe Cty., Inc.*, 724 F. Supp. 2d 382, 397 (W.D.N.Y. 2010).

Almonte's claims of racial discrimination under Title VII must be dismissed with leave to replead. As discussed above, Almonte's Title VII discrimination claims fail because he has not exhausted his administrative remedies as required by Title VII. Within the Second Circuit, "a dismissal for failure to exhaust available administrative remedies should be 'without prejudice'." *Std. Inv. Chartered, Inc. v. NASD*, 560 F.3d 118, 124 (2d. Cir. 2009). Out of an abundance of

caution, Almonte's § 1981 discrimination claim, and his retaliation claims under Title VII and § 1981, are also dismissed with leave to replead—though it is hard to imagine how he can do so plausibly, given the conclusory nature of what he has already put forth.

Additionally, despite a February 26, 2026 Order by United States Magistrate Judge James R. Cho, plaintiff has not identified John and Jane Does 1-10. These defendants are dismissed without prejudice to plaintiff's filing an amended complaint against them that identifies them within thirty days of the date of entry of this Memorandum & Order on the docket. Plaintiff must also file proof of service of process upon those defendants on the docket.

## Conclusion

For the reasons set forth above, LIRR's motion is granted, and plaintiff's claims are dismissed without prejudice. Plaintiff may file an amended complaint within 30 days of the entry of this Memorandum and Order on the docket; otherwise, these claims will be deemed abandoned and dismissed with prejudice. Plaintiff's state law claims will be held in abeyance pending plaintiff's successful repleading of his federal claims.

So Ordered.

Dated: Brooklyn, New York

October 28, 2026

*/s/ Eric N. Vitaliano*

ERIC N. VITALIANO

United States District Judge